Filed 10/3/24  P. v. Moore CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DARCELL MOORE,<br><br>    Defendant and Appellant. | D082786<br><br><br><br>(Super. Ct. No. SCD285976) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION[1]

After trial, a jury convicted Darcell Moore of first degree murder (Pen. Code, § 187, subd. (a)). On appeal, Moore contends the trial court erred by failing to instruct the jury as to subjective provocation. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are largely undisputed. Moore and an associate, Willie Gray, repeatedly stabbed Shawn Puzzo, a homeless man, while he was sleeping, leaving him mortally injured.

Moore testified at trial that three days before the stabbing, he had awakened in the dark to see Puzzo standing very near him, looking at him with a blank stare. Moore "hopped up" and "got out of the way." Puzzo then backed up. That was the only interaction Moore ever had with Puzzo. Moore testified that this incident scared him. Later, he stole a knife "to protect [himself] if anything happens."

A few nights later, Moore and Gray saw Puzzo sleeping in the alcove of a business. Moore stabbed him twice. "I wasn't thinking. I don't know. I wasn't even thinking. I just reacted. I snapped. I just went straight. I just did it." "I was somewhere else . . . I wasn't there." Moore cut his finger while he was stabbing Puzzo, and the cut required stitches. Moore testified that he did not decide to stab Puzzo because of the earlier incident and had no other reason to stab him. Moore testified that Gray also stabbed Puzzo. "So after I did what I did, I stood up, and for some reason, I don't know, I just went into a dizzy state." He took gift cards out of Puzzo's pockets but did not remove

[1] This case is appropriate for resolution by memorandum opinion because it raises "no substantial issues of law or fact." (Cal. Stds. Jud. Admin., § 8.1; *People v. Garcia* (2002) 97 Cal.App.4th 847.)

cash that was in one of Puzzo's pockets. Moore then hid the knife that he had used. On cross examination, he testified that he "probably" shook Puzzo awake before he stabbed him. He agreed that Puzzo had done absolutely nothing to deserve what he did to him.

The court instructed the jury on first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter. The jury was instructed that Moore "has been prosecuted for first degree murder under two theories: (1) the murder was willful, deliberate, and premeditated and (2) felony murder."

During deliberations, the jury posed a question: "On the verdict form for Count 1 Murder in the 1st degree, if we have agreed on different theories do we have to put "not true" at the end of the page. We aren't unanimous on which theory it is." The court responded, "Please see CALCRIM 521. All of you do not have to agree on a theory of first degree murder (willful, deliberate, and premeditated or felony murder). If you have reached an agreement on count one, fill out the blank space for that verdict. If you cannot agree on willful, deliberate and premeditated, leave that blank."

The jury returned a guilty verdict on the charge of first degree murder, and found true the allegation that in the commission of the offense, Moore used a deadly weapon. However, it left blank the line on the verdict form stating that the murder was willful, deliberate and premeditated. The jury also found Moore guilty of assault with a deadly weapon and robbery. The jury did not return verdicts as to second degree murder, voluntary manslaughter, involuntary manslaughter, or petty theft.

## DISCUSSION

Moore first argues that although not requested by trial counsel, the court had a sua sponte duty to give an instruction set forth in CALCRIM

3

522[2] relating to the effect of provocation on the jury's consideration of first degree murder because subjective provocation was a defense theory of the commission of the crime that was supported by the evidence. (See *People v. Breverman* (1998) 19 Cal.4th 142, 148–149.) Moore argues that the note sent by the jury during deliberation shows that the jury was not unanimous in its theory of first degree murder and that at least one juror relied on a malice murder theory, and therefore "there was a reasonable likelihood that a juror – or jurors – would have found appellant guilty of only second degree murder based on subjective provocation."

Moore concedes that the court held in *People v. Rogers* (2006) 39 Cal.4th 826, 880 (*Rogers*), that CALJIC 8.73, the predecessor instruction to CALCRIM 522, was a pinpoint instruction, to be given upon request, and the court did not have a sua sponte duty to give the instruction. Moore distinguishes *Rogers* by noting that in *Rogers*, the jury had not been instructed that provocation had to be objectively reasonable, whereas in this

---

[2]     CALCRIM 522 ("Provocation:  Effect on Degree of Murder" provides in part:

> "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide."

case, provocation was explained only in CALCRIM 570[3], which required that provocation had to be objectively reasonable ("provocation would have caused a person of average disposition to act rashly and without due deliberation"), and therefore the jury was not informed that it could consider subjective provocation in weighing the difference between first degree and second degree murder.

We reject this effort to distinguish *Rogers*.  In *Rogers*, as here, the defense argued that Rogers did not premeditate, but instead acted without thinking:

> "Defendant's own testimony provided sufficient evidence from which the jury could conclude the killing was not premeditated.  Defendant testified that when he killed Clark, he was not making any calculated judgment or weighing considerations for and against killing her; rather he felt only fear and pulled the trigger without thinking. Defendant's experts likewise testified defendant did not premeditate or deliberate in the killing of Clark. . . .  Dr. Glaser believed that in this emotional state, defendant was incapable of premeditating and deliberating.  Dr. Bird agreed the killing of Clark was an impulsive, emotional act

---

[3]     CALCRIM 570 ("Voluntary Manslaughter:  Heat of Passion" provides in pertinent part:

> "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion. The defendant killed someone because of a sudden quarrel or in the heat of passion if:
>
> "1.  The defendant was provoked;
>
> "2.  As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured (his/her) reasoning or judgment;  [¶] AND
>
> "3.  The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment."

of passion and fear, and opined there was no 'thoughtful advance planning or anticipation of doing what he did,' no reasoning or thinking, and no weighing of consequences." (*Rogers*, *supra,* 39 Cal.4th at p. 867.)

In *Rogers* as here, the defense asserted that the trial court should have instructed the jury that even if provocation was insufficient to reduce the killing from murder to manslaughter, it could consider provocation to negate premeditation and deliberation, reducing the crime to second degree murder. *Rogers*, *supra*, 39 Cal.4th at pp. 877-878. (See, e.g. *People v. Thomas* (1945) 25 Cal.2d 880, 903 [provocation raised reasonable doubt about premeditation or deliberation, "leaving the homicide as murder of the second degree; i.e., an unlawful killing perpetrated with malice aforethought but without premeditation and deliberation."])

But as the *Rogers* court concluded, "the manslaughter instruction does not preclude the defense from arguing that provocation played a role in preventing the defendant from premeditating and deliberating; nor does it preclude the jury from giving weight to any evidence of provocation in determining whether premeditation existed. For the foregoing reasons, we hold that [the predecessor to CALCRIM 522] is a pinpoint instruction that need not be given on the court's own motion." (*Rogers*, *supra*, 39 Cal.4th at p. 880.) We agree.

Moore contends that even if the court did not have a sua sponte duty to give CALCRIM 522, his trial counsel was ineffective in failing to make the request for the instruction, because if counsel had done so, the jury could have considered "that even though appellant's earlier confrontation with [Puzzo] happened days before the homicide, he was subjectively, albeit unreasonably, triggered when he saw [Puzzo] again" and thus there was a reasonable likelihood that the jury would have returned a more favorable verdict.

6

Upon review of a claim of ineffective assistance of counsel, first an appellant must show that trial counsel's performance was deficient, i.e., that counsel made errors so serious that appellant was denied his Sixth Amendment right to counsel. Then appellant must show that his defense was prejudiced by the deficient performance. (*People v. Mitchell* (2022) 83 Cal.App.5th 1051, 1060 (*Mitchell*).)

We cannot conclude that the performance of Moore's trial counsel was deficient. Because the court instructed the jury on first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter, defense counsel was able to argue that Moore's testimony established that he acted without thinking and that he could not have premeditated or deliberated before the killing. That was the crux of counsel's argument to the jury:

> "Everything about this case screams an action done without deliberation based on emotion, being overcome and not thinking through, not carefully weighing the decisions. And it's not just Mr. Moore's own words. It's backed up by the context, by the rest of the evidence that has been presented to you. [¶] The prosecution's evidence has fallen far short of beyond a reasonable doubt for premeditated murder, and you should find him not guilty based on that theory."

A further instruction on CALCRIM 522 would have added nothing to this argument.

For the same reason, we cannot conclude that trial counsel's failure to request a pinpoint instruction resulted in any demonstrable prejudice. (See *Mitchell*, *supra*, 83 Cal.App.5th at p. 1060.) Moore testified several times as to his mental state, i.e., that Puzzo had scared him, and that when he encountered Puzzo on a subsequent occasion, "I wasn't even thinking. I just reacted. I snapped." Trial counsel used this testimony as well as other evidence to argue that Moore could not have premeditated or deliberated in a

manner that would allow a conviction for first degree murder. The fact that at least some members of the jury concluded otherwise does not lead to a conclusion that counsel was ineffective or that Moore was prejudiced by the lack of a pinpoint instruction.

DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:

IRION, Acting P. J.

CASTILLO, J.